### GUARANTY TRUST CO. OF NEW YORK v. PHILADELPHIA & L. V TRACTION CO. et al.

### SAME v. LEHIGH VALLEY TRACTION CO. et al.

(Circuit Court, E. D. Pennsylvania. April 2, 1908.)

Nos. 1, 2.

STREET RAILROADS—MORTGAGES—FORECLOSURE—PREFERRED CLAIMS.

Where receivers were appointed for two traction companies in mortgage foreclosure proceedings, and the property brought less than the mortgages, but a fund was provided to pay preferred claims, and it appeared that one-fourth of an expenditure for repairs to a bridge were necessary for the continued operation of the roads, and had been performed on the credit of the earnings within six months prior to the appointment of the receivers, and that three-fourths of the work was unnecessary, the claimant was entitled to a preference only to the extent of one-fourth of the amount due.

In Equity. On exceptions to master's report.

Joseph T. Foulke, P. K. Erdman, and Edward Harvey, for exceptions.

J. Percy Keating, opposed.

HOLLAND, District Judge. These exceptions to the master's report are filed by intervening creditors in this foreclosure proceeding.

Some of the claims are against the Lehigh Valley Traction Company, and others against the Philadelphia & Lehigh Valley Traction Company. Some are disallowed as a whole, while others are allowed in part and disallowed as to part. They are unsecured claims presented for payment against a fund in the hands of the receivers on foreclosure proceedings on two mortgages, one against the Lehigh Valley Traction Company, and one against the Philadelphia & Lehigh Valley Traction Company. The properties brought less than the mortgages, but a fund has been provided for the payment of all claims found to be preferential.

The master, with great care, went into the question of what claims were for necessary operating expenses contracted on the credit of the earnings within six months of the time of the appointment of receivers, and which claims were beyond that period and not preferential; also what claims were not contracted on the credit of the earnings for necessary operating expenses, and for that reason not preferential. Some, however, were found to be in part preferential, and part not so, because they were contracted prior to the six months period. In passing upon each, whether allowed or not, the master has properly disposed of the claims presented, both as to his findings of fact and the application of the law, so well settled in the United States courts as to all questions raised by the exceptions to his report. An examination of this report shows that in his disposition of each disputed claim the master is supported by a similar case decided in the United States courts.

The only exceptions are the claims of the National Bridge Company and George F. Schlicher against the Lehigh Valley Traction Company. The claim of the bridge company is for $10,777.86, and that of Mr. Schlicher is for $721.78. The former is for the erection of a bridge connecting West Bethlehem with Bethlehem. The latter is for lumber furnished to that bridge. One-fourth of each of these claims was allowed by the master, upon the theory that to that extent the expenditure was for necessary operating expenses contracted on the credit of the earnings of the company, and therefore preferential; but the other three-fourths of the cost of the bridge, not being a necessary operating expense, but voluntarily assumed by the railroad company without any necessity therefor, was not such an expenditure as under the law is regarded as preferential. In this we think the master is right. The uncontradicted evidence shows that three-fourths of the work was unnecessary. Alfred Claire, the engineer for the Lehigh Valley Traction Company, who was in charge of the repairs of this bridge before the appointment of the receivers, testified as follows:

"Q. Was all this work necessary for the purpose of strengthening the floor system that you did? A. I should not say it was absolutely necessary; no. Q. Was it necessary for the purpose of carrying the heavy cars? A. Our portion was necessary to carry our heavy cars. Q. Was it necessary to renew the public side at all? A. No, sir; not at all. That could have existed to-day as it was then. Q. Why did you do it? A. Simply to make the construction uniform. * * * Q. What proportion of the work done on the public way was not necessary to strengthen the bridge? A. I should say fully three-quarters of the bridge. Q. Was the supporting part of this structure touched at all? A. None whatever."

The testimony of this witness was not contradicted, and the finding of the master that one-fourth of the expenditure was preferential, as for necessary operating expenses, and disallowing the remaining three-fourths, because not preferential, we think, was justified.

All the exceptions are dismissed, and the report is confirmed.